**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Randy Buchanan,

        Plaintiff,

v.

Commissioner of Social Security
Administration,

        Defendant.

No. CV-20-02279-PHX-MTL

**ORDER**

At issue is the final decision of the Commissioner of Social Security denying Plaintiff Randy Buchanan's Application for Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) with this Court on November 24, 2020, seeking review of the denial of benefits. Defendant Social Security Administration filed an Answer (Doc. 12). The Court now addresses Plaintiff's Opening Brief (Doc. 14), Defendant's Response and Countermotion to Remand (Doc. 17), and Plaintiff's Reply Brief (Doc. 18). The Court has reviewed the briefs and the administrative record (Doc. 13, R.) and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 424) and remands for further proceedings.

## I.    BACKGROUND

Plaintiff filed an initial Application for Title II Disability Insurance Benefits on November 13, 2015, alleging disability beginning March 1, 2014. (R. at 90). Plaintiff's Application was denied initially on March 16, 2016 (R. at 114) and upon reconsideration on October 14, 2016 (R. at 119). Pursuant to Plaintiff's request, a hearing was held on

1    May 15, 2018 (R. at 66), and the ALJ issued a decision denying Plaintiff's application on

2    August 3, 2018 (R. at 465, 27). The Appeals Council denied Plaintiff's request for review

3    on August 8, 2019, and the ALJ's decision became final. (R. at 482.)

4        On October 4, 2019, Plaintiff filed an appeal in the District Court. (R. at 489.) On

5    January 21, 2020, pursuant to the parties' Stipulation to Remand, the District Court

6    reversed the ALJ's denial of benefits and remanded to the Social Security Administration

7    for further proceedings. (R. at 492.)

8        In accordance with the remand, the ALJ held a new hearing on October 22, 2020

9    (R. at 442) and again denied Plaintiff's application in a decision issued on November 4,

10   2020. (R. at 424). Following this unfavorable decision, Plaintiff filed the present appeal.

11   (Doc. 1.)

12       Although Plaintiff began receiving disability benefits on March 20, 2019, due to a

13   "changed circumstance" (Doc. 14-1 at 1), such benefits are not at issue in the pending

14   appeal; rather, the parties contest Plaintiff's eligibility for benefits between March 1, 2014,

15   and March 19, 2019. (Doc. 17 at 2.)

16       After considering the medical evidence and opinions, the ALJ determined that

17   Plaintiff did not engage in substantial gainful activity during the period from Plaintiff's

18   alleged onset date of March 1, 2014, through March 19, 2019. (R. at 33, 430.) The ALJ

19   evaluated Plaintiff's disability claim based on the following severe impairments:

20   osteoarthritis, foot fracture, hypertension, and hyperlipidemia. (*Id.*) The ALJ further

21   determined that Plaintiff did not have an impairment that met or equaled an impairment

22   listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*)

23       In assessing Plaintiff's residual functional capacity, the ALJ found that the objective

24   medical evidence, the effectiveness of treatment, and Plaintiff's activities of daily living

25   demonstrated more functional abilities than Plaintiff claimed in his subjective testimony.

26   (R. at 430–31.) The ALJ also found the opinion of Plaintiff's treating physician, Shahram

27   Askart, DPM, unpersuasive, and instead assigned greater weight to the opinions of the state

28   agency's two non-examining medical consultants, who reviewed Plaintiff's medical

records and opined on Plaintiff's limitations.[1] (R. at 432.) The ALJ ultimately determined that Plaintiff had the residual functional capacity to perform light work with standing/walking for four hours and sitting for six hours in an eight-hour workday; frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and occasionally climbing ladders, ropes, or scaffolds. (R. at 430.) Although the ALJ found that Plaintiff could not perform past relevant work (R. at 433), relying on the opinion of a vocational expert, the ALJ determined that Plaintiff's residual functional capacity allowed him to perform the requirements of jobs such as a bench assembler, inspector and packer, or ticket seller. (R. at 434.) Due to Plaintiff's capacity to perform the aforementioned jobs, the ALJ concluded that Plaintiff was not disabled. (R. at 434.)

## II.   LEGAL STANDARD

A district court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). If the court finds that the ALJ's decision was not based on substantial evidence or was based on legal error, the court may set aside the decision. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence requires "more than a mere scintilla" and should be enough evidence to support a conclusion in a reasonable mind. *Id.* An ALJ's decision should be upheld if "evidence is susceptible to more than one rational interpretation," but a district court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id*. (quotations and citations omitted).

In determining whether a claimant is disabled under the Act, the ALJ must follow a five-step analysis. 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether a claimant is participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Second, the ALJ determines if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). If

---

[1] "The state agency is an entity of the state government in which it is located, and is reimbursed by [the Social Security Administration] for all costs incurred by the state agency while performing work for [the Social Security Administration]." *See SSA State Agency Monthly Workload Data Agency Program Description*, SSA, https://www.ssa.gov/disability/data/ssa-sa-mowl.htm (last visited November 11, 2021).

not, the claimant is not disabled. *Id.* Third, the ALJ determines whether the claimant's impairment meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant disabled, and the inquiry ends. *Id.* If the ALJ must proceed to step four, the ALJ determines whether the claimant's residual functional capacity allows the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled. *Id.* If the ALJ must proceed to step five, the ALJ determines whether the claimant's residual functional capacity allows the claimant to perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

In the present case, the parties agree that the ALJ's decision was not supported by substantial evidence. (Doc. 17 at 3.) As such, the primary issue is whether the proper remedy is to remand for further proceedings or to order payment of benefits.

Plaintiff raises three arguments for the Court's consideration: 1) the ALJ erred in evaluating Plaintiff under Listing 1.03; 2) the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Askart; and 3) the ALJ erred in rejecting Plaintiff's symptom testimony. (Doc. 14 at 1.) Plaintiff contends that the Court should either reverse and remand for a computation of benefits, or remand for a new hearing. (*Id.* at 13.) Defendant asks the Court to remand for a proper evaluation of the treating source's opinion and for a resolution of conflicts and ambiguities in the record. (Doc. 17 at 1, 9–10.)

### A.   The ALJ erred in evaluating Plaintiff under Listing 1.03.

Plaintiff first argues that the ALJ erred by failing to properly evaluate whether Plaintiff met Listing 1.03. Plaintiff states that the ALJ summarily concluded, without any discussion, that signs, symptoms, and laboratory findings do not meet or equal Listings 1.02, 1.03, or any other medical listing. (R. at 430.)

At step three of the sequential evaluation process, the ALJ determines if a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d). If a claimant shows

that his impairment or combination of impairments meets or equals a listed impairment, he will be found presumptively disabled. *See* 20 C.F.R. §§ 416.925–416.926. An impairment meets a listed impairment if it satisfies all of the criteria of that listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, the claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to each element of the listed impairment. *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

"Although a claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing." *Cunningham v. Astrue*, No. CV 11-144 JC., 2011 WL 5103760, at *3 (C.D. Cal. Oct. 27, 2011) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)) ("[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."). Remand for further proceedings is appropriate when "an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case." *Cunningham*, 2011 WL 5103760, at *3 (citing *Lewis*, 236 F.3d at 514 (9th Cir. 2001) (stating that a plaintiff must present a plausible theory as to how an impairment or combination of impairments equals a listed impairment)).

To meet a listing, a plaintiff must satisfy each specified criterion. *Zebley*, 493 U.S. at 530. Plaintiff argues that the medical evidence shows that he meets Listing 1.03, which requires:

> Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. § 404, Subpart P, Appendix 1.03.[2]

Following two years of treatment for a foot injury and related pain, Plaintiff underwent arthrodesis on a joint in his left foot in September 2017.[3] (R. at 408.) At the first ALJ hearing in May 2018, Plaintiff testified that he wore a boot on his foot and used a knee scooter as an assistive device. (R. at 75.) At the time of the first hearing, Plaintiff's inability to ambulate effectively had only continued for the nine months following his September 2017 surgery, a period which did not yet meet the twelve-month requirement of Listing 1.03. (*Id.*)

At the post-remand hearing in October 2020, a period well beyond the twelve-month requirement, Plaintiff testified that he still utilized an electric scooter and had difficulty walking more than 50 feet. (R. at 447.) However, in his second decision, the ALJ failed to address whether Plaintiff's inability to ambulate effectively continued for at least another three months. The ALJ did not provide any reasoning as to why Plaintiff did not meet Listing 1.03. (R. at 430.) In only providing a summary conclusion, the ALJ erred.

**B.    The ALJ erred in rejecting the opinion of Plaintiff's treating physician.**

Plaintiff next argues that the ALJ erred in his evaluation of the medical opinion evidence. Specifically, Plaintiff argues that the ALJ failed to properly consider the opinion of his treating physician, Dr. Askart.

Although an ALJ must consider all the medical evidence in a record, medical opinion sources are separated into three types: 1) treating physicians (who treat a claimant), 2) examining physicians (who examine but do not treat a claimant), and 3) non-examining

---

[2] The inability to ambulate effectively requires "an extreme limitation of the ability to walk," specifically by "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § 404, Subpart P, Appendix 1.00(B)(2)(b). Effective ambulation requires individuals to "be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," including traveling without assistance. *Id.* A plaintiff's "ability to walk independently about one's home" without an assistive device does not demonstrate effective ambulation. *Id.*

[3] Arthrodesis involves fusion of a joint.

physicians (who do not examine or treat a claimant). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (superseded by statute on other grounds). For disability benefit applications filed prior to March 27, 2017, treating medical sources are generally given more weight than non-examining sources due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declines to give controlling weight to a treating source's opinion, the ALJ must consider several factors—such as the length of treatment, frequency of examination, and the physician's specialization—in deciding how to weigh the source's opinion. 20 C.F.R. § 404.1527(c). The ALJ must thereafter provide an explanation for the weight given to each medical source. 20 C.F.R. § 404.1527(f)(2). If certain evidence contradicts a treating physician's opinion, the ALJ must provide "specific and legitimate reasons supported by substantial evidence" for rejecting that physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983))) (internal citation marks omitted).

For applications filed after March 27, 2017, new agency regulations instruct an ALJ not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Here, the record reflects and the parties concede that the ALJ applied the wrong rules to evaluate the medical opinion evidence. Plaintiff filed the instant Application in December 2015, when the old regulations were still applicable. (R. at 189–92.) The ALJ stated that he considered the opinion evidence in accordance with 20 CFR § 404.1527. (R. at 430.) However, the ALJ subsequently stated that he "will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinions, including those from the claimant's medical sources." (R at 432.) The ALJ found that the opinion of Dr. Askart was "unpersuasive," and the State agency assessments were "persuasive." (R. at 432.) In applying the incorrect rules, the ALJ committed error.

### C.     The ALJ erred in rejecting Plaintiff's symptom testimony.

Finally, Plaintiff argues that the ALJ erred in rejecting his subjective symptom testimony. In evaluating subjective symptom testimony, an ALJ must first find objective medical evidence demonstrating an impairment that could reasonably cause a claimant's symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996). A claimant's subjective testimony alone will not establish a disability, and an ALJ will determine whether the claimant's alleged limitations are consistent with medical sources. 20 C.F.R. § 404.1529(a). Once the claimant has shown such an impairment, if there is no evidence of malingering, the ALJ may reject a claimant's symptom testimony only if he offers "specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283–84. Although an ALJ may discredit symptom testimony when daily activities contradict claims of a completely debilitating impairment, *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), "claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722; *see also Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (recognizing that ALJs must be careful in concluding that daily activities such as cooking and cleaning are inconsistent with pain testimony, as claimants may have assistance and flexibility in scheduling at home).

On May 15, 2018, Plaintiff testified that he wears a boot on his left foot when he leaves the house to prevent further damage and injury to his foot. (R. at 75.) He stated that he could walk about 50 yards at one time. (R. at 76.) He stated that he needs to elevate his leg to prevent swelling and while using the bone stimulator every day. (*Id.*) At the hearing on October 22, 2020, Plaintiff testified that in 2015 and 2016 he used an electric scooter any time he left the house. (R. at 446–47.) Plaintiff testified that the only treatment option is to take the screws out of his foot but his doctor stated his mobility would not improve. (R. at 450.) Plaintiff stated that standing, walking, and carrying items causes his foot to throb following the activity. (R. at 451.) He stated that he does physical therapy exercises at home with an elastic band. (R. at 452.) Plaintiff testified that if he does not elevate his foot, he gets swelling and pain. (R. at 455.)

The ALJ found that the objective medical evidence, the effectiveness of treatment, and Plaintiff's activities of daily living illustrated greater functional abilities than alleged. (R. at 431.) He found that when evaluated, Plaintiff's subjective complaints appeared inconsistent with the evidence on record, including clinical and objective findings, and failed to provide a sound basis for a finding of disability. (*Id.*) The ALJ therefore concluded that although Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms failed to align with the evidence in the record. (*Id.*)

The ALJ noted that Plaintiff had no treatment records dated before July 2015, was reportedly happy with his surgery weeks after the procedure, and failed to finish a course of physical therapy. (R. at 431–32.) In Plaintiff's March and July 2016 function reports, the ALJ focused on certain portions where Plaintiff stated that he could take care of personal hygiene, feed a dog, wash dishes, dust, walk onto a patio, and visit his parents or a grocery store once a week. (R. at 212–16, 243–46.) The ALJ also noted that in March 2018, Plaintiff stated that the pain in his foot mostly happened when walking downhill (R. at 422, 432), and a CT scan showed "no acute displaced fracture." (R. at 416, 432.)

Despite the above citations to the record, the ALJ did not provide sufficiently clear and convincing reasons for rejecting Plaintiff's testimony. Although the ALJ noted that a March 2018 CT scan showed "no acute displaced fracture" after Plaintiff's arthrodesis surgery, the radiology report demonstrates that there was only 5–10 percent osseous incorporation of the affected joints,[4] and Plaintiff still had screws in those joints. (R. at 415–16, 422.) Despite Plaintiff's contemporaneous claim that the pain in his foot mostly happened when walking downhill, Plaintiff appears to have utilized a boot during that time.[5] (R. at 75, 375, 422.) Additionally, the function reports that the ALJ cited in support of Plaintiff's light work ability describe Plaintiff's inability to stand for periods of time, his reliance on assistive devices, and his inability to walk farther than 50 feet.

[4] Bridging of the bone; in other words, healing.
[5] Following surgery in September 2017, Plaintiff was advised to continue utilizing a boot as recently as January 2018 (R. at 375) and testified in May 2018 that he continued to use the boot. (R. at 76).

(R. at 212–14, 217–18, 243–46, 248–49.) Although the ALJ found that Plaintiff could "take care" of a dog, go out of the house on his own, and cook some meals, the ALJ overstated Plaintiff's physical abilities. (R. at 432.) When viewed as a whole, the function reports indicate that Plaintiff had to sit when he bathed, dressed, and occasionally cooked; was able to feed but not walk his dog; and used an electric scooter to move to the patio or accompany his spouse to the grocery store. (R. at 213–14, 218.) Considering these inconsistencies, the ALJ did not provide clear and convincing evidence that Plaintiff's daily activities translate to a light work ability. *See, e.g., Garrison*, 759 F.3d at 1015–16 (finding that ALJ erred where she mischaracterized plaintiff's daily activities, including occasional cooking, cleaning, and caring for a child); *Reddick*, 157 F.3d at 722 (ALJ erred in finding that sporadic activities with rest periods demonstrated inconsistency with plaintiff's pain testimony).

Further, the ALJ's determination that Plaintiff's testimony is inconsistent with medical evidence conflicts with the record. For instance, Plaintiff's claims of pain while walking long distances do not necessarily conflict with Plaintiff's claims of pain when standing or walking for *any* period of time. (R. at 212, 337.) The ALJ's statements that Plaintiff had no treatment records prior to July 2015 and failed to finish physical therapy also do not directly contradict Plaintiff's symptom testimony, and the record is full of relevant medical evidence from July 2015 to March 2019. (R. at 431–32.) Additionally, although the ALJ cited post-operative treatment records to support the finding that Plaintiff had minimal pain and less severe physical limitations, those records state that Plaintiff at the time was non-weightbearing and utilized an assistive scooter to move around. (R. at 368, 370, 372.) Plaintiff's more recent, daily activities—feeding his dog, occasionally sitting down to cook, and moving to the patio with a scooter (R. at 213–14, 218)—are not inconsistent with a completely debilitating impairment and are instead more consistent with an inability to ambulate effectively.[6] *C.f. Molina*, 674 F.3d at 1113.

Accordingly, the Court finds that the ALJ failed to provide sufficiently clear and

---

[6] See 20 C.F.R. § 404, Subpart P, Appendix 1.00(B)(2)(b).

1   convincing reasons for finding that Plaintiff's symptom testimony was not supported by

2   the record. Without more, a lack of treatment records prior to July 2015, Plaintiff's failure

3   to complete physical therapy, and the ALJ's reading of the function reports do not provide

4   substantial evidence to discredit Plaintiff's symptom testimony. As such, the ALJ erred.

5           **D.     The ordinary remand rule applies.**

6           As a result of the ALJ's errors, Plaintiff argues that the Court should apply the

7   credit-as-true rule and remand for a calculation of benefits. (Doc. 14 at 14.) Defendant

8   contends that the Court should remand for further proceedings, allowing the ALJ to

9   evaluate the treating source opinion evidence under the correct standard and to evaluate

10  conflicts between Plaintiff's testimony and the medical evidence. (Doc. 17 at 9–15.)

11          Although the ordinary remedy for reversible error is to remand the case for further

12  administrative proceedings, the credit-as-true rule may apply in rare circumstances where

13  three conditions are present. *Garrison*, 759 F.3d at 1020. First, the record must be fully

14  developed, and further administrative proceedings would not be useful to resolve

15  ambiguities or conflicts. *Id.*; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101

16  (9th Cir. 2014). Second, the ALJ must have failed to give "legally sufficient reasons for

17  rejecting evidence," including subjective testimony and medical opinions. *Id.* Third, if the

18  discounted or rejected evidence was credited as true, the ALJ would be required to find

19  that the claimant is disabled. *Id.*

20          The ALJ in the present case failed to give legally sufficient reasons for rejecting

21  Plaintiff's symptom testimony, erred at step three of the sequential evaluation process, and

22  applied the wrong rules to evaluate the medical opinion evidence. Under these

23  circumstances the Court will remand this matter for further administrative proceedings.

24          Accordingly,

25          **IT IS HEREBY ORDERED** that the November 4, 2020 decision of the ALJ

26  (R. at 424–35) is **reversed**.

27          **IT IS FURTHER ORDERED remanding** this case to the Social Security

28  Administration for further proceedings consistent with this Order.

- 11 -

1    **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment

2  consistent with this Order and close this case.

3    Dated this 22nd day of November, 2021.

Michael T. Liburdi

Michael T. Liburdi
United States District Judge